## Lickert v. Kemp

*Paul H. Price* and *Peter M. Cancelliere*, for plaintiff.
*Stevens & Lee* and *John H. Bertolet*, for defendant.

SHANAMAN, J., April 6, 1936.—Plaintiff, by a written agreement with defendant, agreed to buy, and defendant to sell, certain buildings and land in Greenwich Township, Berks County, with certain articles of personal property, all for $12,500, payable $2,000 on the signing of the contract, $4,500 on delivery of deed, and $6,000 by the assumption of a mortgage of that amount. Plaintiff paid the $2,000 down money and subsequently failed to complete his performance. Plaintiff has never asked for

delivery of deed and has brought suit in assumpsit against defendant to recover $750 with interest, which is the difference between the $2,000 down money paid by plaintiff and the amount of $1,250 called for by the "liquidated damages" clause in the agreement. Said clause is as follows:

"It is mutually agreed that should either party hereto fail or neglect to duly perform his part of this agreement, he shall forthwith pay and forfeit as liquidated damages to the other party a sum equal to ten per cent. of the agreed price of sale, except that if said agreed price is less than $2,000 said sum shall be $200."

Plaintiff contends that the damages which he is liable to pay for his breach are limited to $1,250, which is a sum equal to 10 percent of the agreed price of the sale. Defendant contends that she is not seeking to enforce her right to a $1,250 payment or forfeiture, but is resting on the right enjoyed by a vendor ready and willing to perform, namely, to retain any and all payments voluntarily made by a nonperforming vendee in part performance of his obligation. Plaintiff concedes that in the absence of a clause for liquidated damages defendant could under the circumstances retain the $2,000 down money. Defendant concedes that by proper stipulation the parties to an agreement of sale may limit the damages payable in the event of breach, but contends that because the clause for liquidated damages was not expressly made the exclusive remedy of the parties the vendee may at her option either resort to the forfeiture clause or may insist upon the right to consummate the sale and receive the purchase money. Defendant contends, therefore, that plaintiff, being unable or unwilling to pay the remainder of the purchase price, cannot maintain his action to recover any part of his payments already made.

The "liquidated damages" clause differs from those in Cape May Real Estate Co. v. Henderson, 231 Pa. 82, and Korman et al. v. Trainer et al., 258 Pa. 362, in that (1) it does not expressly refer to the retention by the vendor

of down moneys paid, and (2) it is written not solely for the benefit of the vendor but also for that of the vendee, in that it provides liquidated damages for the vendee in case of the vendor's breach. Such clause, however, does not become of its own force an exclusive remedy to the parties. Thus, "the fact that a contract contains a provision for the payment of a penalty or liquidated damages for breach of a promise is not a bar to the specific enforcement of the promise": 2 A. L. I. Restatement of the Law of Contracts §378; Srolowitz v. Roseman, 263 Pa. 588, accord. Similarly, it has been held that a clause merely empowering the vendor to retain down money as liquidated damages for the vendee's breach has only the effect to give the vendor "the right of election, either to assert and enforce the forfeiture or to insist upon performance of the contract": Cape May Real Estate Co. v. Henderson, supra, p. 86, and Korman et al. v. Trainer et al., supra. While the clause presently under consideration differs as above noted from those in the cases cited, the language and underlying principle of those cases is equally relevant here. Although the instant stipulation was for the benefit of both parties, it would not have excluded the vendee, if fully performing, from maintaining his bill for specific performance.

"By a provision for liquidated damages the parties do not mean that the amount fixed is an agreed price for the privilege not to perform the promise": 2 A. L. I. Restatement of the Law of Contracts §378.

"When the contract does not provide by clear, precise and unequivocal language, that the purchaser may terminate it by his own default, such effect will not be given it. . . .

"The contract with which we are now dealing did not in express terms provide that it should be terminable at the will of either party, so that the defendant might even terminate it by his own default, nor does it contain anything from which such a covenant could be clearly implied. The clause of forfeiture does not even provide that,

upon default by the purchaser the contract should become void or be rescinded.

"There is no covenant that the defendant should by his default be released from his obligation to pay, nor that the rights of the grantor under the contract should cease": Cape May Real Estate Co. v. Henderson, supra, 85, 86.

If it be urged that such covenant should be implied by us in the present case from the fact that this stipulation was for the benefit of both parties, and was not a mere provision for retention by vendor of down money paid, we cannot imply the quality of exclusiveness from the quality of community of the remedy to both parties, any more than the court could imply exclusiveness as against the vendor in the cases above cited from the mere fact that the parties had in those cases liquidated the damages. It was doubtless within the power of the parties to provide that a breach should rescind the contract and should relegate either party to the rights created by the liquidation clause. But they have not done so, nor can the court remake their contract for them.

If no down money had been paid, it could hardly be contended that the vendor could not, upon tender of a deed, maintain assumpsit for the purchase price. If she could obtain judgment therefor, she may equally well affirm the agreement and retain such portion of the purchase price as has been paid to her. This does not constitute a forfeiture, since she has as yet done nothing to evidence a rescission on her part on account of plaintiff's breach. The testimony and the letters written by the vendee to the vendor show unmistakably that the nonperformance was due solely to the inability of the vendee to finance the purchase. In the vendor's affidavit of defense, and at the trial, defendant expressed her constant and present willingness to convey the title and to deliver possession, if the vendee performed his part. When sued by the vendee, the vendor counterclaimed for $1,250, at the same time denying liability and averring willingness

to perform. At the trial, the vendor withdrew her counterclaim, with consent of the vendee, and again expressed her present willingness to perform. The vendor has not, in our opinion, rescinded the contract, since she has at all times contended that she could retain the purchase money, and has at all times expressed her willingness to convey title and deliver possession. We do not regard her withdrawn counterclaim, under the circumstances, as an election to rescind, nor can defendant set up his own breach as a rescission: Cape May Real Estate Co. v. Henderson, supra.

Plaintiff relies chiefly on Artzerounian et al. v. Demetriades, 276 Pa. 303. The parties there agreed on a down payment of $1,000, to be forfeited as liquidated damages in case of breach by plaintiff, the vendee, a further payment of $1,000 after 60 days and the remainder of the $21,000 purchase price at settlement, with a stipulation that the vendee might have an extension on the payment of an additional $1,000. The vendee paid the three sums of $1,000 each and, when the transaction ultimately failed of consummation, brought suit against the vendor for those sums. The court entered judgment for the last two payments, for $2,000, in favor of the vendee, because the "agreement provided for the forfeiture of the first thousand dollars for noncompliance, but not for forfeiture of the subsequent payments in that event": page 305. Our Supreme Court sustained this judgment, saying:

"If defendant intended the other payments to be forfeited, he should have seen to it that the contract so provided; forfeitures are not favorites of the law": page 305.

That case presented the important additional fact that the vendor was unable to give a good title.

"In their statement of claim, plaintiffs declared that defendant was unable to perform his part of the agreement prior to its expiration, because he had no legal title to the property. The affidavit meets this allegation with a bald denial, which is insufficient. . . . Defendant in

his affidavit does not aver that the legal title was vested in him; unless it was, and he could transfer it to plaintiffs, the latter were not in default, and, not being in default, defendant could not lawfully forfeit the money they had paid": page 306.

The decision, therefore, does not, in our opinion, overrule Cape May Real Estate Co. v. Henderson, supra. This is rendered clear by the further fact that in the Artzerounian case the Supreme Court said: "While somewhat dissimilar on its facts, the case of Howard v. Stillwagon, 232 Pa. 625, has a decided bearing on the present case in principle": page 305.

In Howard v. Stillwagon, 232 Pa. 625, the vendors had unmistakably elected to rescind the contract by having entered judgment in an amicable action of ejectment to recover possession of the property, and were therefore held by their outright rescission of the contract to have disentitled themselves from retaining the partial payments already made by the vendee. We conclude that the present defendant is entitled to judgment n. o. v.

And now, to wit, April 6, 1936, the rule of the defendant, Amy Kemp, for judgment n. o. v., is made absolute.

From Charles K. Derr, Reading.