595 A.2d 1272

**Matthew BERWICK and Tina Berwick, his wife, Appellees,**

**v.**

**DANIEL W. KEULER REALTORS, INC., and Herbert Schramm and Inga Schramm, his wife, Appellants.**

Superior Court of Pennsylvania.

Submitted July 17, 1991.

Filed Aug. 28, 1991.

James V. Fareri, Stroudsburg, for appellants.

David A. Martino, Bangor, for appellees.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

HUDOCK, Judge:

Daniel W. Keuler Realtors, Inc., and Herbert and Inga Schramm (Appellants) appeal from an order of the Court of Common Pleas of Monroe County granting Matthew and Tina Berwick (Appellees) a judgment of $11,000 with interest thereon from September 18, 1989. We affirm.

On April 22, 1989, Appellant Keuler Realtors prepared an Agreement of Sale (hereinafter "Agreement of Sale" or "Agreement") which was executed by Appellees as proposed buyers of a vacant parcel of land from Appellants Schramm, as proposed sellers, for the sum of $34,700. The Appellees paid the sum of $11,000 on deposit toward the purchase price to Appellant Keuler Realtors. The Agree-

ment between the parties contained a mortgage contingency clause, making Appellees' obligation contingent upon their obtaining a mortgage loan in the amount of $21,000 to be repaid over ten years. The Agreement also contained a provision requiring the Appellees to make their mortgage applications through the office of Appellant Keuler Realtors. The Agreement also contained a clause stating that the Agreement could be altered only by a writing executed by the parties.

The Appellees applied for a mortgage loan at the First National Bank of Palmerton and were advised on June 16, 1989 by the bank that their mortgage loan was approved for the sum of $19,600 and a seven-year repayment period. This mortgage loan differed in amount and term from that specified in the Agreement of Sale. Appellants Schramm, through Appellant Keuler Realtors, offered to provide to the Appellees "gap financing" in the amount of $2,300 on the same terms which the bank had provided, in order to make up the difference between the bank's offering and the loan requirement. Appellees rejected the proposed financing offered by both the bank and Appellants Schramm, claiming that the monthly payment required by a seven-year mortgage was much higher than that required by a ten-year mortgage. Appellants refused to return the deposit monies to Appellees and Appellees filed a Complaint on September 18, 1989 seeking the return of their $11,000 deposit.

Appellants' first claim is that the trial court erred in admitting parol testimony into evidence. Appellants contend that statements made by an agent of Appellant Keuler Realtors regarding Appellees' failure to apply for a mortgage through Appellant Realtor constituted improper parol evidence. Specifically, Appellants claim that Appellees did not prove at trial that the statements in question were made subsequent to the Agreement of Sale. Had the statements been made subsequent to the Agreement, both sides agree, they would not be barred by the parol evidence rule. But since Appellants believe that Appellees failed to prove that

the statements were subsequent to the Agreement, Appellant maintains that the statements should have been deemed parol evidence and, therefore, excluded.

■■■ This Court's scope of review in a non-jury trial is limited to whether findings of fact are supported by competent evidence and whether the trial court committed an error of law. *Slaseman v. Myers*, 309 Pa.Super. 537, 455 A.2d 1213 (1983). In this case, the trial court, in its Finding of Facts, does not directly address the issue of whether the statements of Appellant Keuler Realtors' agent were contemporaneous with or subsequent to the Agreement of Sale; the court merely states that the Appellees acted "with the knowledge and approval of an agent of [Appellant Keuler Realtors]." Finding of Fact No. 3. However, in its order denying Appellants' motions for post-trial relief, the trial court suggests that it believed the statements to have been subsequent to the Agreement. Opinion of December 20, 1990, p. 3. Though the record is ambiguous as to whether the statements in question were made contemporaneous with or subsequent to the Agreement of Sale, we believe that even if the statements were contemporaneous, and therefore inadmissible, the Appellants' subsequent conduct so clearly modified the Agreement that it is unnecessary for us to determine whether the trial court's finding (if such a finding was made) is supported by competent evidence.

■■■ The major obstacle to allowing modification by subsequent conduct is the clause in the Agreement which states that the Agreement "shall not be altered, amended, changed or modified except in writing executed by the parties hereto." Appellees' Complaint, Exhibit A, Agreement of Sale, Paragraph 13 "Representations". However, such a clause may be waived by implication, though "the person claiming the waiver to prevail must show that he was misled and prejudiced thereby." *Brown v. City of Pittsburgh*, 409 Pa. 357, 361, 186 A.2d 399, 401 (1962). In the present case, it is apparent that Appellees were misled into thinking their mortgage application to the First National Bank of Palmerton was proper; Appellant Keuler Real-

tors made no protests when they learned that Appellees were not making their mortgage application through their office, and, furthermore, when the bank offered Appellees an inadequate amount of financing, Appellant Keuler Realtors sought supplemental financing from Appellants Schramm in the hope that Appellees could accept the combination bank and seller financing. Appellant Keuler Realtors clearly wanted Appellees to accept the financing and complete the purchase. Appellant Keuler Realtors cannot encourage Appellees to accept the bank financing and then later claim that that financing was somehow objectionable to them. In *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10 (1968), our Supreme Court held that "the effectiveness of a non-written modification in spite of a contract condition that modifications must be written depends upon whether enforcement of the condition is or is not barred by equitable considerations, not upon the technicality of whether the condition was or was not expressly and separately waived before the non-written modification." *Id.* 430 Pa. at 560, 244 A.2d at 16. In the present case, though there was no express waiver of the clause prohibiting non-written modifications, we believe equitable considerations prevent us from enforcing that clause. We hold that Appellants, by their conduct subsequent to the Agreement of Sale, waived the clause of the Agreement prohibiting non-written modifications; Appellants may not now rely on that clause to deny Appellees the return of their deposit.

Furthermore, we believe that there is sufficient evidence to conclude that the subsequent conduct of Appellees and Appellant Keuler Realtors modified the Agreement of Sale to allow the Appellees to decline to use Appellant Keuler Realtors as their agent for the purpose of obtaining a mortgage loan. "[W]here a written contract is modified by subsequent conduct of the parties, we believe that the extent of the modification must be shown by clear and convincing evidence." *See Tamaqua Borough v. Rush Township Sewer Authority*, 85 Pa.Cmwlth. 421, 430, 482

A.2d 1167, 1172 (1984). The testimony of both Tina Berwick (N.T. at 7) and Daniel Keuler (N.T. at 26–27) confirms that both parties knew that Appellees were not using Appellant Keuler Realtors as agent for the purpose of obtaining a mortgage loan, and that Appellants did not object to this conduct at that time.

Appellants' next claim that Appellees never applied for the type of mortgage contemplated by the mortgage contingency clause of the Agreement of Sale. Specifically, Appellants assert that Appellees' mortgage application did not indicate the term or the interest rate specified in the Agreement of Sale. However, we note that Tina Berwick testified that she and her husband applied for a loan at ten percent (N.T. at 15), and that the bank's approval letter of June 16, 1989 indicated that the term of the loan that Appellees applied for was ten years. (Plaintiff's Exhibit P–5). Therefore, given our limited scope of review, *Slaseman v. Myers, supra,* we must conclude that there was ample evidence for the trial court to find that Appellees did apply for the type of mortgage specified in the Agreement of Sale.

█ The third claim of Appellants is that the financing offered by the bank and Appellants Schramm substantially satisfied the mortgage contingency clause of the Agreement of Sale, thereby creating a legal duty on the part of Appellees to close. We believe that both case law and common sense do not support this contention.

In *Tieri v. Orbell,* 192 Pa.Super. 612, 162 A.2d 248 (1960), Buyers unsuccessfully attempted to obtain twenty-year financing. Seller offered the Buyers a purchase-money mortgage of eleven and one-half years duration. When Buyers refused the Seller's financing the Seller retained the Buyers' deposit monies as liquidated damages. This Court held that although the mortgage contingency clause of the Agreement of Sale was silent as to the type of mortgage the Buyers were to obtain, the Buyers' attempts to secure a twenty-year mortgage indicated the type of mortgage they sought, and that, accordingly, the Seller could not force the

Buyers to accept financing of a sort that he had not originally contemplated. Given the *Tieri* holding and the facts before us in this case, we must conclude that the combined seller-bank financing did not substantially satisfy the mortgage contingency clause of the Agreement of Sale. We note that here, unlike in *Tieri,* the mortgage contingency clause is specific as to the rate, term, and type of lender sought. The court in *Tieri* would not allow Seller to force Buyers to accept a type of financing that Buyers had demonstrated, through their actions, was not what they desired; this Court certainly will not allow Seller (Appellants Schramm) to force the Buyers (Appellees) to accept financing that runs counter to the type of financing that both parties had agreed upon and memorialized in the Agreement of Sale.

Appellants would have Appellees accept a mortgage loan of a term significantly less than that provided for in the Agreement—seven years instead of ten years. Additionally, the Agreement calls for Appellees to apply for financing at a "responsible lending institution." Appellees' Complaint, Exhibit A, Agreement of Sale, Paragraph 4(e). It is self-evident that Appellants Schramm are not a "responsible lending institution". Appellant Keuler Realtors even acknowledged this in their testimony below. (N.T., Daniel W. Keuler, at 27). We believe that the nature of the lender is a material element to a proposed purchaser of property for at least two reasons.

First, an institutional lender, like a bank, savings and loan or credit union, will usually appraise the property to be mortgaged in order to determine if its value is sufficient to cover the entire loan. Where, as here, the property is found inadequate to the amount of the loan sought, the institutional lender will not approve the loan. If the institutional lender so denies the loan application or, as here, approves the application but for a lesser amount and at terms less favorable to Buyer, the mortgage contingency clause operates to release Buyer from his obligation to complete the purchase. The requirement that a lender be a "responsible

lending institution" ensures that the property will be appraised before the Buyer has to complete the purchase, and that if the property is of significantly less value than the sale price, the loan application will not be approved and Buyer will be released from the contract. Thus, the Buyer is afforded protection by the lending procedures of the institutional lender. Requiring a Buyer to accept "gap financing" from the Seller after an institutional lender has denied a mortgage application in the amount required by the Agreement of Sale would defeat one of the primary purposes behind the requirement that Buyer apply to only "responsible lending institutions". Second, if Buyer's mortgage is held by an established lending institution and Buyer defaults, the institutional lender is apt to be more able and willing to adjust matters reasonably than would an individual who held the mortgage. For these reasons, we conclude that the financing offered by the bank and Appellants Schramm did not substantially satisfy the requirements of the mortgage contingency clause. Consequently, Appellees were not obligated to accept that financing and did not, therefore, breach the Agreement of Sale when they rejected that financing.

Finally, Appellants contend that the lower court improperly awarded pre-judgment interest to Appellees. Appellants cite no cases for this argument, for indeed the case law clearly holds that pre-judgment interest on contract disputes is a matter of legal right. *Ayoob v. William Penn Trust Company*, 132 Pa.Super. 496, 1 A.2d 580 (1938); *Penneys v. Pennsylvania Railroad Company*, 408 Pa. 276, 183 A.2d 544 (1962); *Gold & Company, Inc. v. Northeast Theatre Corporation*, 281 Pa.Super. 69, 421 A.2d 1151 (1980). We find that the trial court's award of pre-judgment interest was correct.[1]

Order affirmed.

**1.** Having affirmed the trial court on all counts, we note that even if Appellants had prevailed on any of their claims, they would not have been entitled to retain the Appellees' entire $11,000 deposit. In the event that a Buyer breaches the Agreement of Sale, the usual Seller's

remedy is retention of the Buyer's deposit monies as liquidated damages. *Tudesco v. Wilson,* 163 Pa.Super. 352, 60 A.2d 388 (1948). However, in Pennsylvania a Seller may generally not retain as liquidated damages any sum in excess of 10% of the contract price. *See Kraft v. Michael,* 166 Pa.Super. 57, 70 A.2d 424 (1950), *Ellis v. Roberts,* 98 Pa.Super. 49 (1929) (retention of 15% of the contract price was excessive and amounted to an attempt to compel specific performance from the Buyer, and was therefore a penalty and unenforceable as such). In the present case, the Appellees' deposit of $11,000 amounted to over 31% of the sale price of $34,700. The clause requiring Appellees to forfeit the entire $11,000 in the event of their breach would therefore be a penalty. Since the clause amounts to a penalty, we could not have enforced it. Thus, had we found merit to any of Appellants' arguments on appeal we would have remanded to the trial court where Appellants would have been limited to only those damages they could prove.